IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CRYSTAL A. MARKS,
            Plaintiff,

v.                                                                  Civil Action No. 2:07-CV-38
                                                                              (Maxwell)

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
            Defendant.

## REPORT AND RECOMMENDATION

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying

her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act

("Act"), 42 U.S.C. §§ 1381-1383f. The matter is awaiting decision on cross Motions for Summary

Judgment and has been referred to the undersigned United States Magistrate Judge for submission

of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ.

P. 72(b).

## I. Procedural History

Crystal A. Marks ("Plaintiff") filed her application for SSI on June 20, 2005 alleging

disability beginning June 1, 2005 due to "inability to count money, use a cash register, depression,

learning difficulty, problems understanding instructions, and slow pace. (Tr. 65, 112, 116).  The

application was denied initially and on reconsideration (Tr. 33, 35-39, 40, 41-43). Administrative

Law Judge ("ALJ") Steven Slahta held an administrative hearing on March 10, 2006. (Tr. 181-207).

Plaintiff, represented by counsel, testified on her own behalf, along with Vocational Expert Eugene

Chuchman ("VE"). By decision dated April 13, 2006, the ALJ denied benefits (Tr. 15-25). Plaintiff

filed a request for review of the hearing decision, which was denied by the Appeals Council on April

6, 2007 rendering the ALJ's decision the final decision of the Commissioner (Tr. 4-7).

## II. Statement of Facts

Plaintiff was born on September 30, 1972 and was 32 years old at the time of her alleged onset date of disability, to wit: June 1, 2005. (Tr.53). She took special education classes and graduated high school on time. (Tr. 68, 116, 183, 195-196, 204). Plaintiff has very limited relevant work history. She worked four (4) days as a maid at Days Inn and quit because she couldn't get the pattern of the rooms and what she was to do for specific rooms. (Tr. 184, 188-191). She held the position of a stock clerk at Walmart for a period of four (4) months prior to quitting that job because she claimed it was too hard. (Tr.R. 149, 192-194). As of the date of the hearing she was married, weighed 240 pounds and stood 62" tall. (Tr. 185). Although she passed the written driver's license test, she has never taken the driving test because a semi-truck got behind her and scared her when she was practicing. As a result, she has never had a driver's license. (Tr. 186, 197-199). At the time of the administrative hearing, Plaintiff considered herself to be healthy physically. (Tr. 200). Her daily routine (seven days a week) generally entails: four to five (4 - 5) hours of riding in the passenger seat of the vehicle her husband uses to deliver newspapers, folding the papers, and putting them in plastic bags for delivery (Tr. 194); shopping with her husband; visiting family; doing house chores such as clothes, cooking, cleaning, mowing the lawn; going for walks; watching movies on TV; playing card games; playing her Game Boy video; and caring for pets. (Tr. 75, 77, 78, 118, 194, 199, 201, 202 and 204). Plaintiff testified she had difficulty reading and understanding big words and counting money. (Tr. 195-197). She does not maintain the family checkbook. Plaintiff had begun taking anti-depressant medications by the time of the administrative hearing. (Tr. 203). As of July 25, 2005 Plaintiff had no longitudinal history of inpatient or outpatient mental health

treatment or services. (Tr. 116). According to the record, and by her own testimony, she was denied Welfare medical coverage because the State (West Virginia) determined there was nothing medically wrong with her. Tr. 185. On July 28, 2005, Plaintiff was seen by Lois Holloway, M.S. in Grantsville, West Virginia for a single consultative psychological examination, testing and evaluation. The historical data mirrors the above. Holloway reported that Plaintiff's performance of the tests was "notable for extremely slow pace." She concluded that the testing "indicated a Full Scale IQ score of 72, which falls within the borderline range. Most notable about Ms. Marks' subtest pattern was the markedly deficient concentration, as evidence by the Working Memory Index score of 61. Her functional/educational skills were moderately impaired and at the 3rd and 4th grade levels. ( Tr. 119). Julie Jennings, PhD, performed Psychiatric Review Technique on September 23, 2005. She rated Plaintiff to be Moderately restricted in activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. From a functional capacity standpoint, Jennings did not find Plaintiff markedly limited in any category. She did conclude Plaintiff was moderately limited in her ability to understand and remember detailed instructions; in her ability to carry out detailed instructions; in her ability to maintain attention and concentration for extended periods; in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; in her ability to sustain an ordinary routine without special supervision; in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in her ability to travel in unfamiliar places or use public transportation and in her ability to set realistic goals or make plans independently of others. (Tr.120-136). Her opinions, findings and conclusions were confirmed by review of John E. Damm, a state

agency psychologist. (Tr. 137-151). To the extent there are other relevant facts, the undersigned will further address them where they are pertinent to the determination.

### III. Administrative Law Judge Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520 and 416.920, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity at any time during the period at issue herein, i.e., since June 2005 (20 CFR §§ 416.920(b) and 416.971 et seq.).

2. During the period at issue, the claimant has objectively evidenced borderline intellectual functioning and depression, medically determinable impairments that, either individually or in combination, are "severe' and expected to significantly limit her ability to perform basic work activities for a period of at least 12 consecutive months 20 CFR § 416.920(b).

3. During the period at issue, the claimant has had no medically determinable impairments, whether considered individually or in combination, that have presented symptoms sufficient to meet or medically equal the severity for any impairment listed in Appendix 1, Subpart P, Regulation No. 4 (20 CFR §§ 416.920(d), 416.925 and 416.926).

4. Throughout the period at issue, the claimant has had at least the residual functional capacity to perform, without impairment-related exertional limitation and within a low stress environment, a range of unskilled, entry level work activity that consists of routine, repetitive processes and tasks that entail only one - to two step instruction and primarily involve things rather than people (20 CFR § 416.920(e)).

5. The claimant has no vocationally relevant past work experience, has acquired no potentially transferable work skills and has been unable to perform or sustain skilled work activity throughout the period at issue (20 CFR § 416.965 and 416.968).

6. The claimant throughout the period at issue is appropriately considered for decisional purposes as a "younger individual" (20 CFR § 416.963).

7. The claimant attained a "high school" education and is able to communicate in English (20 CFR § 416.964).

8. Considering the claimant's age, level of education, work experience and the types of work that she has had the residual functional capacity to perform throughout the

period at issue, she could be expected to make a vocational adjustment to work that exists in significant numbers within the national economy 20 CFR §§ 416.960© and 416.966).

9. The claimant has not been under a "disability," as defined in the Social Security Act, at any time during the period at issue herein, i.e., since June 2005 (20 CFR § 416.920(g)).

(Tr.17-25).

## IV. The Parties' Contentions

Plaintiff contends:

1. The ALJ erred because he failed to include Ms. Marks' mental limitations in the functional capacity finding and in the hypothetical question to the vocational expert.
2. The ALJ erred because he improperly gave significant weight to the unsupported opinions of the State Agency Reviewing psychologists.
3. The ALJ erred because he improperly considered Ms. Marks' credibility by selectively citing only portions of her testimony in violation of Hines v. Barnhart..

Defendant contends:

1. Substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

## V. Discussion
## A. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)*(quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit stated substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case

before a jury, then there is 'substantial evidence.'" *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)(*quoting Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Commissioner's decision, the court must also consider whether the ALJ applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## B. Improper Weight Given To Unsupported Opinions of the State Agency Reviewing Psychologists

## C. Incomplete RFC and Hypothetical To VE

### Weight Given To Opinion of State Agency Reviewing Psychologists

Plaintiff makes the following three complaints with respect to opinions of the State Agency Reviewing Psychologists:

1) They did not see or test the Plaintiff.

2) They had only the report of Holloway to review.

3) Therefore, they had nothing to consider that would have given them a basis for coming up with a different conclusion than Holloway.

Plaintiff also complains that the ALJ failed to include that Plaintiff's concentration was "markedly deficient, based on the Working Memory index score of 61 on the WAIS-III and WRAT-3 objective testing" and her "[p]ace was found to be 'markedly slow'" in his RFC and hypothetical questions to the VE.

These findings were made by Psychologist Lois Holloway, M.S. Holloway was the only psychologist to see and test Plaintiff. Holloway saw and tested Plaintiff on a one time consultation basis at the request of the Commissioner. Tr. 115-119.

In <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990), the Fourth Circuit stated that the

6

ALJ bears the ultimate responsibility for weighing the evidence and resolving any conflicts, and that, in reviewing for substantial evidence, the reviewing court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.

In Craig v. Chater, 76 F.3d 585, 590(4th Cir. 1996), the Fourth Circuit held:

Circuit precedent does not require that a treating physician's testimony "be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). In fact, 20 C.F.R. §§ 404.1527(c)(2) and 416.927(d)(2) (emphasis added) both provide,

> [i]f we find that a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, we will give it controlling weight.

[4,5] By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.

The regulations clarify that ALJs "are responsible for reviewing the evidence and making findings of fact and conclusion of law." 20 C.F.R. § 416.927(f)(2). In doing so, the ALJ must consider the findings of state agency consultants as evidence from a non-examining physician, but he is "not bound by any findings made by state agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 416.927(f)(2)(i). In evaluating a consultant's findings, the ALJ must consider the consultant's expertise, supporting evidence in the case file, the explanations of physicians of record, "and any other evidence relevant to the weighing of opinions."

20 C.F.R. § 416.927(f)(2)(ii).

In the instant case, the ALJ noted that Holloway stated that Plaintiff's "subtest pattern was indicative of 'markedly deficient concentration'" and her 'pace to be 'extremely' or 'markedly' slow" noting also that her "persistence was 'within normal limits.'" Tr. 21. The ALJ noted that two other State Agency psychological consultants reviewed the record and concluded "that the claimant had demonstrated no more than 'moderate' psychological impairment-related limitation with regard to concentration, persistence or pace." Tr. 21.

Plaintiff's counsel argues that the ALJ should not give great weight to the assessments of the other State Agency psychological consultants because their findings were not supported by evidence of record and were inconsistent with the findings and conclusions of Holloway, who had actually seen and tested Plaintiff. In response the ALJ noted that the marked deficiencies concluded by Holloway through analysis of the testing, were not further supported by "related episodes of decompensation or similarly 'marked' impairment-related deficiencies with regard to daily activities or social functioning...." In short, the ALJ was saying that Plaintiff's daily activities were inconsistent with wholesale acceptance of Holloway's stated marked limitations, but were supportive of the other consulting psychologists' more moderate limitations. In so finding, the ALJ discussed Plaintiff's "previously sustained employment for at least four consecutive months"; ability "to graduate from high school"; ability "to pass her written driver's license test (although she never attempted the driving component or obtained a license)"; ability "to play and enjoy video and card games ..."; playing a computer "Game Boy" as indicative of her ability to sustain concentration and as contra-indicators of "any more than mild psychological impairment-related limitation." Tr. 21.

**RFC and Hypothetical To VE**

The ALJ then applied his conclusions with respect to Marks' limitations to his final RFC and his valuation of the VE's testimony in determining if there was substantial work that Marks could perform. Marks challenges that analysis based on the ALJ's refusal to be bound by the marked limitations noted by Holloway.

The RFC/Hypothetical Question asked of the VE was: "Okay. Mr. Chuchman, assume a younger individual with a high school education in special education with no exertional limitations but has the following nonexertional limitations. Unskilled, low stress work defined as one and two-step processes, routine and repetitive tasks, primarily working with things rather than, people, entry level. With those limitations can you describe any work." Tr. 205 and 22. In this singular question, limitations of pace and concentration were not specifically mentioned.

However, immediately thereafter, the ALJ asked and got a response from the VE as to the impact that Plantiff's concentrational difficulties and her inability to stay on task one-third to two thirds of the day would have on the available jobs and Plaintiff's attorney, on cross-examination, asked and got responses from the VE relative to how much time Plaintiff could be off task and how her markedly slow pace would impact available jobs. (Tr. 205-206). Therefore, Plaintiff's complaint is not that the ALJ did not have the testimony available, but that he did not consider the VE's answers as dispositive in making his decision and did not consider Holloway's opinion as dispositive in rendering his final RFC

At the fifth step of the sequential evaluation, "the burden shifts to the [Commissioner] to produce evidence that other jobs exist in the national economy that the claimant can perform given his age, education, and work experience." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). The ALJ must consider the claimant's RFC, "age, education, and past work experience to see if [he] can

do other work." 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

The ALJ may rely on VE testimony to help determine whether other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1566(e), 416.966(e). The Fourth Circuit has held that "[t]he purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which the particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). When "questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir.1993) (citing Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir.1989)). In Koonce v. Apfel, 166 F.3d 1209 (4th Cir 1999), the Court held that an ALJ has "great latitude in posing hypothetical questions" and need only include limitations that are supported by substantial evidence in the record.

If the ALJ poses a hypothetical question that accurately reflects all of the claimant's limitations, the VE's response thereto is binding on the Commissioner. Edwards v. Bowen, 672 F. Supp. 230, 235 (E.D.N.C. 1987). The reviewing court shall consider whether the hypothetical question "could be viewed as presenting those impairments the claimant alleges." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993).

Social Security Regulation (SSR) 96-8p (emphasis added). RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms ( e.g., pain). See 20 C.F.R. § 404.1529(a).

The Fourth Circuit has long recognized that daily activities may support the Commissioner's determination of non-disability. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986). The court

emphasized the importance of daily activities by stating that "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994).

To suggest in that the ALJ does not have any latitude and must include marked limitations in concentration and pace even when he finds that the Plaintiff's daily activities dictate findings and a RFC more consistent with the two State Agency review psychologists, is contrary to the conclusions in Gross, Mickles and Koonce, *supra.*

Plaintiff's counsel suggests this case is governed by Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006). In that case, Hines, a 13+ year veteran railroad crew leader, was diagnosed and treated by a physician for chronic pain caused by sickle cell disease; left employment in 2001; thereafter suffered from insomnia, occasional blurred vision in one eye, chronic and periodic acute pain which would require recovery time of approximately a month; generalized weakness, aching and pain. While he attempted to do things at home such as mow his lawn; went to church a couple times per month and rendered unrebutted testimony concerning his pains in his legs, the ALJ rejected his claims because there was no objective proof of the pain , a total misapplication of the " **FOURTH CIRCUIT STANDARD:** Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle

11

tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain *565 is not readily susceptible of objective proof, however, *the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.*" *Id.* at 564-565. The Court of Appeals reversed primarily based on the ALJ's erroneous application of the law.

First, the instant case is not a pain case. Second, there is substantial evidence in the form of daily activities and two State Agency psychological consultants that separates the instant case from Hines. For instance, Plaintiff's testimony that each day, seven days a week, she gets up with her husband and rides in a car for a period of 4 or so hours folding his newspapers and putting them in plastic bags so he can deliver them is some evidence that substantiates the ALJ's RFC determination. Tr 22-23. In addition, there is no evidence Plaintiff did not fill out the eight page application-related Adult Function Report/questionnaire (Exhibit 3E) noted by the ALJ in his decision. Tr. 23. In that questionnaire, Plaintiff noted reading as one of her hobbies. Not only is there no evidence that Plaintiff was ever fired from a job, there is no evidence that she left a job because of any inability to be around people. Tr. 23. Viewing the totally of Plaintiffs activities and interests, the ALJ had substantial evidence to support his conclusion that "the presence of any totally debilitating cognitive deficiencies that would preclude ability to perform any and all forms of work" were contraindicated. Tr. 23.

Contrary to the assertions of counsel for Plaintiff, there is not evidence that the ALJ didn't believe any of the psychologists opinions or that he just made up "whatever limitations" he felt a person with a mental disorder should have. Substantial evidence in the record supports the conclusion that the ALJ considered the psychologists' opinions; he weighed and balanced them; he

considered them in light of the evidence of Plaintiff's daily activities and prior limited work experience. Tr. 23, 24.

Accordingly, the undersigned finds that the ALJ properly considered all of three of the consulting psychologists opinions; properly rejected Holloway's findings of marked limitations as inconsistent with other substantial evidence in the record; and properly considered only the limitations supported by the totality of the evidence in the record for inclusion in his RFC.

## D. Improper Credibility Determination

The ALJ made the following findings and conclusions in the unfavorable decision that are now selectively challenged by Plaintiff:

1) The claimant testified at her March 2006 disability hearing that she was 5'2" and weighed 240 pounds. She indicated that she had applied for a state medica assistance card but had been found upon medical evaluation to have nothing wrong with her. No objective evidence indicates that the claimant's functionality has been significantly and persistently limited by body habitus or any physical impairment. The claimant characterized both herself and her spouse as "pretty much housecats" who rarely went out to engage in social activities. She indicated that they subsisted on his income from a newspaper delivery route but she acknowledged that she regularly assisted him in that enterprise by regularly accompanying him on the route and folding newspapers. The claimant testified that the time necessary to complete the route was dependent upon the weather and could range between three and five hours, seven days a week. At a hospital visit in September 2004, the claimant indicated that she did such work with her husband at night and had been doing so for the preceding five years. The Administrative Law Judge notes that the claimant has declared no personal income from such ongoing work activities. Her ongoing engagement in such regular activity tends to indicate that she is possessed of ability to perform and sustain a limited range of simple, routine work tasks.
2) However, the Administrative Law Judge fundamentally agrees with the conclusions of the State Agency's psychological consultants with regard to the claimant's impairment-related psychological limitations as to concentration, persistence or pace. In that regard, it is noted that the claimant: previously sustained employment for at least four consecutive months; was able to graduate from high school; was ultimately able to pass her written driver's license test (although she never attempted the driving component or obtained a license); and is able to play and enjoy video and card games. Particularly, the claimant's testimony that she habitually plays a computer "Game Boy" is indicative of significant ability to sustain

concentration. She also wrote that she reads as a hobby. Ms. Holloway also noted that the claimant's social functioning was "within normal limits." The claimant was noted to be pleasant, to have good eye contact and to display a sense of humor. In addition, the claimant reported a variety of daily activities that contraindicate any more than mild psychological impairment-related limitation.

3) As indicated above, the claimant told Ms. Holloway in July 2005 that she enjoyed playing video and card games. The claimant testified that she stayed home and typically spent the day playing a "Game Boy" video game device. She indicated that she had performed adequately at her previous, four-month job as a laborer/stocker at Wal-Mart but had eventually quit because it was "too hard." The claimant stated that she had tried work as a motel maid. She testified that she quit that job because she could not understand the "pattern of the rooms." She told Ms. Holloway in July 2005 that she had quit that job because she could not understand what she was supposed to do in the rooms. The record indicates that the claimant was able to earn over $4,500 in 1998 at her Wal-Mart job. However, after quitting that job she made only one other subsequent work attempt, when she earned $32 at Shoney's in 2002, before deciding in July 2005 to seek Social Security disability benefits. In the opinion of the Administrative Law Judge, such evidence tends to indicate that the claimant is capable of performing work activity but has historically lacked the inclination, motivation or need to seek and sustain official work activity. The claimant presents at the relatively young age of 33 absent any history of significant and persistently debilitating physical problems, and the undersigned believes that she is physically capable of sustaining a wide range of gainful work activity. As indicated above, the claimant has ostensibly engaged for approximately the last seven years in regular, ongoing work activity by assisting her spouse on a newspaper delivery route. She also indicated that after returning home in the early morning hours she did housecleaning chores and engaged in daily activities that included accompanying her husband shopping, watching television, visiting others and talking on the telephone.

4) With regard to the claimant's level of cognitive functioning, it ostensibly appears that she in July 2005 adequately read, understood and completed by her own hand an eight-page application-related Adult Function Report/questionnaire. She indicated that one of her hobbies included "reading." She indicated that she had never been fired from a job because of any inability to be around people. She responded somewhat equivocally as to her ability to tolerate stress but indicated that thtat she was generally able to handle changes in routine. The Administrative Law Judge believes that the claimant's ability to comprehend and complete that function report, as well as maintain interests and perform activities such as she detailed therein, contraindicates the presence of any totally debilitating cognitive deficiencies that would preclude ability to perform any and all forms of work. Tr. 22-23.

Claimant challenges the above findings and conclusions of the ALJ claiming they were

cherry picked from the record to support the conclusion the ALJ wanted to reach while ignoring the

entirety of her testimony and the evidence in the record in violation of the principle laid down in Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006).

It must be noted that Hines is factually and legally distinguishable from this civil action. Hines suffered from diagnosed sickle cell anemia, insomnia, the sequella therefrom including but not limited to fatigue and pain, and occasional blurred vision in one eye. Hines had worked for 13 or 14 years as a railroad crew leader until his SCD became so severe that he was not able to work. Hines was on disability insurance. Hines was unable to complete simple tasks like mowing the lawn in the same day without having to lie down and rest for a half day. Hines' wife testified he was forgetful, he did not leave the house for trips or visiting friends and "a lot of time he have a lot of pains in his leg." Notwithstanding the Fourth Circuit's rulings in Walker v. Bowen, 889 F.2d 47 (1989) and the cases that preceded it, the ALJ found no disability concluding there was no disabling pain from the conditions with which Hines suffered because there was not objective clinical evidence of existence and intensity of pain. Based on this clear error of law, the Court of Appeals affirmed the District Court's decision overturning the Commissioner's denial of benefits and, in lieu of remand, granted benefits.

The Fourth Circuit has long recognized that daily activities may support the Commissioner's determination of non-disability. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986). The court emphasized the importance of daily activities by stating that "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994).

In the instant case, the ALJ properly considered Marks' daily activities in weighing her credibility with respect to claimed inability to work and with respect to her residual functional

15

capacity to perform work.

Marks' challenge to the ALJ's finding that she worked 4 months at Wal-Mart is based on her counsel's conclusion that the record shows she "has never been able to sustain even simple unskilled work" and that the ALJ found that she "did not have any work activity that could be considered as past relevant work." DE 10, p. 13. Counsel's broad brush characterizations of the ALJ's findings and conclusions understate the same. The ALJ actually found: "The claimant testified at her March 2006 hearing that she had worked for only four months in 1997 as a stocker at Wal-Mart and four four days as a mad in a motel." Tr. 24. From this the ALJ concluded: "5. The claimant has no vocationally relevant past work experience, has acquired no potentially transferable work skills and *has been unable to perform or sustain **skilled work activity*** throughout the period at issue." Tr. 24 (emphasis added by the undersigned). The ALJ correctly stated Marks' work history. He correctly and accurately found that activity did not transcend into transferable work skills. From the record, it is not possible to tell that the finding of non-transferable work skills is based on the skills or the brief duration of the work performed. It is clear from other findings that the ALJ found daily activities that Marks was performing equated to her having the ability to do some unskilled work. The ALJ correctly concluded that there was no skilled work Marks had performed or could perform.

Marks next challenges the ALJ's finding that she graduated from high school claiming the ALJ "conveniently failed to mention that all of her classes, except are, were in the special education program." DE10, p. 13. This is a patently untrue criticism. On page 24 of the record and in finding 7 of the unfavorable decision, the ALJ specifically found: "The claimant has reported that she was enrolled in special education courses and graduated from high school in 1992."

Marks complains the ALJ misrepresented that she passed her driver's license written test and

16

reads as a hobby by not including that it took her approximately 20 tries to pass the written driver's test and that he reading ability was objectively measured at the 4th grade level. Notwithstanding the criticisms, the ALJ correctly found that Marks passed the written driver's test; correctly noted that she did not have a driver's license because she never took the practical driving test (road test) and correctly found that Marks read as a hobby. Notwithstanding any objective measurement of reading levels, it was correctly noted that Marks ostensibly filled out her own application related Adult Function Report (Exhibit 3E/5). While Marks may not be able to read beyond the level of a public newspaper, the unskilled work of a "vehicle washer, trash collector and office cleaner (at night)" hardly requires the ability to read and comprehend technical journals.

Contrary to Marks' assertions, the ALJ did not "cherry pick" the facts. As shown by his decision, the ALJ assessed a broad range of daily activities and actions as testified to by Marks in the hearing and from the record as a whole in reaching his conclusions as to RFC and non-disability.

It must be remembered that there is no physical disability or limitation involved in this case. Marks testified when asked if she had any problems that caused her much limitation from a physical standpoint: "No, physical I'm actually healthy physically." Tr. 200.

Accordingly, the undersigned concludes the ALJ applied the correct law, <u>Gross v. Heckler</u>, *supra* at 1165, and the facts noted in his unfavorable decision are substantially supported by the record of the case as a whole.

## VI. Recommendation

For all the reasons herein stated, I find substantial evidence does support the Commissioner's decision denying the Plaintiff's application for SSI. I accordingly recommend Defendant's Motion for Summary Judgment be Granted, and Plaintiff's Motion for Summary Judgment be Denied.

Any party may, within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Opinion/Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Opinion/Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Opinion/Report and Recommendation. 28 U.S.C. § 636(b)(1); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *Thomas v. Arn*, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail an authenticated copy of this Opinion/Report and Recommendation to counsel of record.

Respectfully submitted this 3rd day of July, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE